**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **RENE TORRES,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. EP-20-CV-00149-DCG-ATB** |
| | § | |
| **EL PASO POLICE DEPARTMENT,** | § | |
| **HEIDI MENA, RN, PROVIDENCE** | § | |
| **MEMORIAL HOSPITAL; DAVID** | § | |
| **CAMACHO, DETECTIVE;  KFOX NEWS,** | § | |
| **KVIA NEWS,  KDBC NEWS,  EL PASO** | § | |
| **TIMES,** | § | |
| **Defendants.** | § | |

**REPORT AND RECOMMENDATION
OF THE MAGISTRATE JUDGE**

On this day, the Court considered the status of the above-styled and numbered cause.  On May 22, 2020, Plaintiff Rene Torres ("Torres"), proceeding *pro se*, filed an application to proceed *in forma pauperis* along with a financial affidavit and a Complaint.  (ECF No. 1).  On May 28, 2020, this Court granted Plaintiff's application, and his Complaint was thereafter filed.  (ECF Nos. 2, 3).  In the Order, the Court directed that "[p]rior to ordering service of process on Defendants, the Court [would] engage in judicial screening of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915."  (ECF No. 2).  On July 24, 2020, Torres filed his "Summary of Facts in Support of Civil Action" ("Supplement").[1]  (ECF No. 8).  The Court has now screened Plaintiff's Complaint and submits this Report and Recommendation.

---

[1] Based upon the content of the Supplement, it appears that Torres is attempting to supplement rather than supersede his original Complaint.

1

## I.    BACKGROUND[2]

Torres is currently in the custody of the Texas Department of Criminal Justice ("TDCJ") and is incarcerated at the Lindsey Unit in Jacksboro, Texas.  (ECF No. 3, p. 1).  In his Complaint, Torres alleges that on August 18, 2018, he found "Amber Mena deceased at her trailer home . . . in El Paso, Texas."  (*Id.* at 4).  Upon discovering Amber Mena, Torres "called 911 and reported it."  (*Id.*).

Torres contends that Amber Mena's mother, Heidi Mena, "told the detectives that she thought [Torres] . . . killed her daughter."  (*Id.*).  In his Supplement, Torres expands on his contentions.  According to the Supplement, on February 5, 2019, a detective from the Auto Theft unit of the El Paso Police Department ("EPPD") told Torres to come to the police station to identify his car.  (ECF No. 8, p. 2).  After identifying his car, Torres "was approached by detective[] David Camacho and . . . transported to [EPPD] Homicide Division."  (*Id.*).  "After two hours of interrogation[, Torres] was arrested" for the murder of Amber Mena.  (*Id.*).  While in custody, Torres observed media coverage of his arrest for the murder of Amber Mena.  (*Id.* at 6-7).  This coverage included his picture and reports that he had committed the murder.  (*Id.*)

The murder charge was eventually declined by the District Attorney and the charges were dropped.  (*Id.* at 7).  Based upon the investigation, arrest, and subsequent news coverage of the investigation, Torres contends that he "suffer[s] from PTSD[,] anxiety, Bi-polar depression, and [is] permanently damaged mentally and emotionally."  (*Id.*).  Torres now seeks to bring claims against numerous defendants for actions taken relating to the investigation, arrest, and related media publications.  (ECF No. 3, p. 3-4).

---

[2] While recounting the factual background, the Court addresses only the facts relevant to the immediate Report and Recommendation.

Torres names the EPPD as the first defendant.  (ECF No. 3, p. 3).  He seeks to bring claims for False Arrest, Harassment, Discrimination, and Defamation of Character against the EPPD. (*Id.*).

Next, Torres names Heidi Mena as a defendant.  In his Complaint, Torres alleges that Heidi Mena "[t]old authorities that [Torres] murdered her daughter with [the] intent to do [Torres] harm." (*Id.*).  Torres seeks to bring a claim against Heidi Mena for defamation of character.

In his Complaint, Torres names Detective David Camacho ("Camacho") as the third defendant.  (*Id.*).  Torres alleges that Camacho harassed him, followed him, interrogated him, tried to make him confess to a murder that he did not commit, and subsequently arrested him.  (*Id.* at 4). Torres seeks to bring claims against Camacho based upon his arrest.  (*Id.*).

Finally, Torres seeks to bring claims against "KFOX Ch 14 News" ("KFOX"), "KVIA Ch 7 News" ("KVIA"), "KDBC CH 4 News" ("KDBC") and the El Paso Times ("Times") (collectively "News Organizations") for defamation.  (*Id.*).  Torres alleges that the News Organizations "[b]lantly [sic] put [his] picture and said [he] committed that murder and defamed [him] on . . . television."

## II.    LEGAL STANDARD

Title 28 U.S.C. § 1915 directs a court to dismiss an *in forma pauperis* complaint at any time if it determines that the complaint fails to state a claim on which relief may be granted.  28 U.S.C. § 1915(e)(2)(B)(ii).  Further, the court may *sua sponte* dismiss on these grounds even without serving the defendants.  *See Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991) ("Dismissal [under § 1915] is 'often made *sua sponte* prior to the issuance of process, so as to

spare prospective defendants the inconvenience and expense of answering such complaints.'") (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)).[3]

To determine whether an *in forma pauperis* complaint fails to state a claim on which relief may be granted, courts engage in the same analysis as when ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Hale v. King*, 642 F.3d 492, 497–99 (5th Cir. 2011) (per curiam).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint when a defendant shows that the plaintiff has failed to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual matter contained in the complaint must allege actual facts, not legal conclusions masquerading as facts. *Id.* (citing *Twombly*, 550 U.S. at 555) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'").

To resolve a Rule 12(b)(6) motion, courts must determine "whether in the light most favorable to the plaintiff and with every doubt resolved on his behalf, the complaint states any valid claim for relief." *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003) (citation omitted). A complaint states a "plausible claim for relief" when the factual allegations contained therein infer actual misconduct on the part of the defendant, not a "mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. The complaint "'does not need detailed factual allegations,' but must

---

[3] *See also Jones v. Smith*, 234 F. App'x 249, 250 (5th Cir. 2007) (per curiam) (stating that service on defendants is not required before dismissing an action for failure to state a claim) (citing *Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that 28 U.S.C. § 1915A, like § 1915(e)(2), "clearly does not require that process be served or that plaintiff be provided an opportunity to respond before dismissal")).

provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Furthermore, *pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys, and such pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam). However, even a *pro se* complaint may not merely set forth conclusory allegations. The *pro se* litigant must still set forth facts giving rise to a claim on which relief may be granted. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curiam).

## III.   ANALYSIS

At the outset, the Court notes that Torres has filed both a Complaint and a Supplement. Torres's Supplement appears to merely expand on some of the allegations in his Complaint. "An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Rule 10(c) of the Federal Rules of Civil Procedure directs that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." Fed. R. Civ. P. 10(c). A valid incorporation by reference of an original complaint under Rule 10(c) must provide the defendants with ample notice of the claims against them. *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1176 (5th Cir. 2006); *see Wolfe v. Charter Forest Behavioral Health Sys., Inc.*, 185 F.R.D. 225, 228–29 (W.D. La. 1999) ("While Rule 10(c) authorizes adoption by reference in later complaints, such adoption must be done with a degree of specificity and clarity which would enable the responding party to easily determine the nature and extent of the incorporation.").

Furthermore, *pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys, and such pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam). Here, Torres specifically states that the Supplement is merely a "summary of facts in support of [his] civil action." (ECF No. 8, p. 2). Further, unlike the Complaint, the Supplement does not comply with the requirements of Rule 8 of the Federal Rules of Civil Procedure. Accordingly, it appears that Torres is attempting to supplement rather than supersede his original complaint. *See Clemmons v. Georgia-Pac. Corp.*, No. CV31400432JWDRLB, 2015 WL 9307272, at *2 fn.6 (M.D. La. Dec. 21, 2015) ("By Plaintiff's choice, therefore, the Complaint does not supersede Plaintiff's original complaint."). Construed liberally, the Court finds Torres's statements in his Supplement to be a valid incorporation by reference of his original Complaint. Therefore, the Court will consider the Supplement to be a supplement to, rather than a replacement for, Torres's Complaint.[4]

### a.      Claims against the El Paso Police Department

In his Complaint, Torres seeks to bring claims against the EPPD for False Arrest, Harassment, Discrimination, and Defamation of Character. (ECF No. 3, p. 3).

First, the Court finds that Torres's claims against the EPPD should be dismissed because the EPPD is not a proper defendant. Torres has failed to establish that the EPPD enjoys a separate, legal existence from the City of El Paso and, therefore, the EPPD cannot be sued separately. "In order for a plaintiff to sue a city department, it must enjoy a separate legal existence." *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (internal quotation marks omitted). "The capacity of an entity to sue or be sued 'shall be determined by the law of the state in which

---

[4] Torres therefore has a Complaint (ECF No. 3), as supplemented (ECF No. 8).

the district court is held.'" *Darby*, 939 at 313  (quoting Fed. R. Civ. P. 17(b)).  Further, "unless the [legal] entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself."  *Id.*  Finally, "[t]he plaintiff has the burden of showing that the city department has the capacity to be sued."  *Pueblo v. City of El Paso*, No. EP-17-CV-00162-DCG, 2018 WL 7133707, at *2 (W.D. Tex. Mar. 22, 2018) (citing *Darby*, 939 F.2d at 314).

In *Kirkendall v. Grambling & Mounce, Incorporated*, the "district court . . . concluded that the El Paso Police Department was not subject to suit . . . because it did not have a separate legal existence from the municipality itself."  4 F.3d 989, 1993 WL 360732, at *3 (5th Cir. Aug. 23, 1993).  Further, the plaintiff "d[id] not suggest that the police department [was] a legal entity separate from the City of El Paso."  *Id.*  The Fifth Circuit "affirm[ed] the dismissal of the El Paso Police Department from the suit because there ha[d] been no showing that the [police] department ha[d] a legal existence separate from the City of El Paso."  *Id.*

In this case, Torres has not alleged, and has not shown, that the EPPD has a legal existence separate and apart from the City of El Paso.  Further, Torres has not alleged and has failed to show that the City of El Paso has taken any steps to grant the EPPD jural authority.  Therefore, the Court finds that the EPPD should be dismissed from this suit.

Assuming, *arguendo*, that Torres had named the proper defendant, the City of El Paso, in his Complaint, the Court finds that those claims should be dismissed.  Municipalities cannot be held liable under 42 U.S.C. § 1983 based upon a theory of vicarious liability.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under

§ 1983." *Id.*; *see Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) ("[A municipality] is liable only for acts directly attributable to it 'through some [sort of] official action or imprimatur.'") (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). Municipal liability is "limited to acts that are, properly speaking, acts 'of the municipality' – that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

Under Section 1983, municipal liability for a policy or custom claim requires proof of:  (1) a policymaker; (2) an official policy or custom; and (3) a violation of constitutional rights of which the "moving force" is the official policy or custom. *Piotrowski*, 237 F.3d at 578. Furthermore, only where a municipality adopts a policy that violates a constitutional right or fails to adopt a policy preventing the violation of a constitutional right "evidenc[ing] a 'deliberate indifference' to the rights of its inhabitants[,] can such a shortcoming be properly thought of as a [municipal] 'policy or custom' that is actionable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Therefore, to establish municipal liability, a plaintiff must establish both municipal causation and culpability. *See Snyder v. Trepagnier*, 142 F.3d 791, 795–96 (5th Cir. 1998) ("Plaintiffs seeking to win under this theory must first prove a direct causal link between the municipal policy and the constitutional deprivation; they then must establish that the city consciously enacted a policy reflecting 'deliberate indifference' to the constitutional rights of its citizens.").

There are multiple ways in which a custom or policy can be found to exist.  First, a custom or policy can stem from a single act by an official with final policymaking authority. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986) (establishing that isolated actions or decisions by a municipal policymaker with "final policymaking authority" may create municipal liability).

Second, the custom or policy can also be a policy statement formally announced by an official policymaker.  *See Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010) (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam)).  Finally, a custom or policy can also be demonstrated through a "persistent[,] widespread practice of [municipal] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.*; *see Webster*, 735 F.2d at 841.  "For a custom or practice to be considered a de facto policy, however, a plaintiff must allege facts 'showing a pattern of abuses that transcends the error made in a single case.'" *Lozano v. Ortega*, No. EP-14-CV-239-KC, 2014 WL 6611595, at *15 (W.D. Tex. Nov. 19, 2014) (quoting *Piotrowski*, 237 F.3d at 582).  "[I]solated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski* 237 F.3d at 578.

Torres's Complaint fails to allege the existence of an official policy of the EPPD or the City of El Paso.  A plaintiff seeking to establish municipal liability under *Monell* based upon an official policy "may point to a policy statement formally announced by an official policymaker." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010).  In his Complaint, Torres makes no such allegation.  Accordingly, the Court finds that Torres has not alleged the existence of an official policy "announced by an official policymaker." *Id.*

Further, the Court finds that Torres has failed to allege the existence of a custom within the EPPD.  Rather than relying on an official policy, a "plaintiff may demonstrate a 'persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Id.* (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th

Cir. 1984) (en banc) (per curiam)).  However, "to plead a practice 'so persistent and widespread as to practically have the force of law', a plaintiff must do more than describe the incident that gave rise to his injury."  *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).  In *Pena*, "the only 'specific fact' in the complaint [was] the single incident in which Peña was involved."  879 F.3d at 622.  The Fifth Circuit held that the plaintiff's allegations were "conclusional and utterly devoid of factual enhancements."  *Id.* (quotation marks omitted).  Just as in *Pena*, Torres's Complaint is devoid of any facts other than those relating to the single incident giving rise to his alleged injuries. Accordingly, the Court finds that Torres has failed to allege a custom in his Complaint sufficient to establish municipal liability under *Monell*.

   The Court also finds that Torres's allegations contained in his Complaint do not allege the existence of a policymaker, as required to establish municipal liability.  In *Pena*, the Fifth Circuit explained that "because the identity of the policymaker is a legal question, courts should not 'grant motions to dismiss for failing to plead [a] specific identity.' Rather, 'the complaint need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable.'"  *Id.* (quoting *Groden v. City of Dallas*, 826 F.3d 280, 286 (5th Cir. 2016)).  The Fifth Circuit then held that the "complaint invite[d] no more than speculation that any particular policymaker, be it the chief of police or the city commissioner, knew about the alleged custom" and found that the plaintiff had failed to allege a policymaker.  *Pena*, 879 F.3d at 622.  Just as in *Pena*, Torres's Complaint does not suggest the existence of a policymaker. Accordingly, the Court finds that Torres has not named the proper defendant for a municipal liability claim and that Torres has failed to state a claim for municipal liability.

### b.      Claim Against Camacho

In his Complaint, Torres alleges that Camacho "falsely arrested [Torres] for murder." (ECF No. 3, p. 4).  "A constitutional claim for false arrest . . . 'requires a showing of no probable cause.'"  *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019), cert. denied, 140 S. Ct. 220 (2019) (quoting *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009)).  "Probable cause is established by 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'"  *Arizmendi*, 919 F.3d at 897 (quoting *Hilton*, 568 F.3d at 204).  Accepting the allegations in the Complaint relating to Torres's arrest as true, the Court finds that Torres has alleged facts sufficient to order service of process on Camacho.

### c.      Defamation Claims

In his Complaint, Torres seeks to bring claims for defamation against Heidi Mena, KFOX, KVIA, KDBC, and the El Paso Times (collectively "Defamation Defendants") for stating that Torres killed Amber Mena.  (ECF No. 3, p. 3).  "[D]efamation is not a federal constitutional tort cognizable in an action brought pursuant to 42 U.S.C. § 1983." *Davis v. Myers*, No. CIVA 08-4492, 2008 WL 4747424, at *2 (E.D. La. Oct. 17, 2008) (citing *Mowbray v. Cameron Cty.*, 274 F.3d 269, 277 (5th Cir. 2001)).  Instead:

> Texas law establishes the following elements to state an actionable claim of defamation: (1) publication of a false statement of fact to a third party, (2) the statement must concern the plaintiff and be defamatory, (3) the publication must be made with the requisite degree of fault, and (4) the publication must cause damages.

*Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 743 (5th Cir. 2019).

The Court finds that the claim for false arrest against Camacho and the claims against the Defamation Defendants do not "form part of the same case or controversy."  28 U.S.C. § 1367(a).

"A court with original federal jurisdiction over certain claims has supplemental jurisdiction over state law claims "that are so related . . . that they form part of the same case or controversy under Article III of the United States Constitution." *Ning Ye v. Holder*, 667 F. Supp. 2d 103, 104 (D.D.C. 2009) (quoting 28 U.S.C. § 1367(a)).   In *Ning Ye*, the plaintiff asserted constitutional claims against federal defendants for "discrimination on the basis of race or national origin, false arrest and false imprisonment, malicious prosecution, and civil fraud" for incidents occurring on March 18, 2008, and October 23, 2008.   *Id.*   The plaintiff also raised a defamation claim against a defendant for defamation for events occurring on February 23, 2008, and October 3, 2008.   *Id.* The court found that it lacked supplemental jurisdiction over the defamation claims because "'[t]he event that trigger[ed] liability for [the defamation claim] and the [constitutional claims were] completely separate.'"   *Id.* (quoting *Taylor v. District of Columbia*, 626 F.Supp.2d 25, 29 (D.D.C. 2009)); *cf. Singh v. George Washington Univ.*, 368 F.Supp.2d 58, 72 (D.D.C. 2005) (finding no supplemental jurisdiction over state law defamation claim because facts needed to prove defamation claim "would offer no insight" into facts needed to prove the federal claim) *vac'd on other grounds*, 508 F.3d 2097 (D.C. Cir. 2007).

Just as in *Ning Ye*, the events that allegedly trigger the Defamation Defendants' potential liability for the defamation claims occurred on different dates and are completely separate from the events that allegedly trigger Camacho's liability for the constitutional claims.   Torres alleges in his Complaint that Camacho falsely arrested Torres without probable cause on February 5, 2019. (ECF No. 8, p. 2).   The allegedly defamatory statement made by Heidi Mena occurred before Torres's arrest by Camacho.   *See* (ECF No. 3, p. 3).   Further, while Torres does not allege an exact date, he does allege that it was only after his arrest and while he was in custody, that Torres saw the allegedly defamatory statements from the News Organizations.   (ECF No. 8, p. 5).

Additionally, the elements of the constitutional claim for false arrest are completely separate and distinct from the elements of the defamation claims against the Defamation Defendants. *Compare Arizmendi*, 919 F.3d at 897, *with Walker*, 938 F.3d at 743. Therefore, the facts needed to prove the defamation claims against the Defamation Defendants would offer no insight into the facts needed to prove the constitutional claim against Camacho. Accordingly, the Court recommends dismissal of the claims against the Defamation Defendants for lack of supplemental jurisdiction.

In the alternative, the Court finds that the claims against the Defamation Defendants should be dismissed because the Defamation Defendants are not properly joined in this action. Pursuant to Federal Rule of Civil Procedure 20, defendants may only be joined in a single action if "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(B). "A district court has discretion under Rule 20(a) to control the scope of a lawsuit by limiting the number of defendants a plaintiff may hail into court in a particular case." *Tuft v. Texas*, 397 F. App'x 59, 61 (5th Cir. 2010) (citing *Arrington v. City of Fairfield*, 414 F.2d 687, 693 (5th Cir. 1969)). Further, "'the creative joinder of actions' by prisoner plaintiffs to avoid the strictures of the Prison Litigation Reform Act of 1995 . . . should be discouraged." *Tuft*, 397 F. App'x at 61 (quoting *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998)).

In *Smith v. Warden, Hardee Correctional Institution*, the court affirmed the dismissal of unrelated claims brought against multiple prison officials related to the conditions of his confinement at a single correctional institution. 597 F. App'x 1027 (11th Cir. 2015). In *Smith*, the plaintiff brought three types of claims. *Id.* First, the plaintiff alleged that some defendants "interfered with his right of access to the courts." *Id.* at 1030. Second, the plaintiff alleged that a different group of defendants "conducted unreasonable searches of [plaintiff's] cell." *Id.* Finally, the plaintiff alleged that a third group of defendants "supplied inadequate clothing and bedding to

inmates." *Id.*  The court held that the plaintiff's "status as a *pro se* litigant did not relieve him of the obligation to comply with Rule 20(a)." *Id.*

In this case, it appears that there are no questions of law or fact common to all defendants that will arise in Torres's claims against Camacho and the Defamation Defendants.  First, the elements of Torres's 42 U.S.C. § 1983 claim against Camacho are different than the elements of his Texas state law defamation claims against the Defamation Defendants.  *Compare Arizmendi*, 919 F.3d at 897, *with Walker*, 938 F.3d at 743.  Second, the facts at issue are entirely different between the claims against Camacho and the Defamation Defendants.  While the factual inquiry for the claims against Camacho will be confined to the probable cause at the time of Torres's arrest, the factual inquiry for the claims against the Defamation Defendants will be confined to the defamatory nature of the statements at the time they were made.  In other words, whether or not there was probable cause to *arrest* Torres for murder will have no bearing on whether or not the Defamation Defendants defamed Torres when they allegedly published statements that Torres *murdered* Amber Mena.  Accordingly, the Court finds that Torres is attempting to bring multiple causes of action against different defendants, and that these causes of action require proving different elements and entail different factual inquiries.  Therefore, the Court recommends that the Defamation Defendants be "drop[ped as] part[ies]."  Fed R. Civ. P. 21.

Finally, in the alternative, the Court finds that should it be determined that supplemental jurisdiction exists over the claims against the Defamation Defendants, the Court recommends that the District Court decline to exercise supplemental jurisdiction over those claims because "th[ose] claim[s] substantially predominate[] over the claim or claims over which the district court has original jurisdiction."  18 U.S.C. 1367(c)(2).

> There are several discretionary factors to be considered by a district court in deciding whether to exercise its pendent jurisdiction power. Those factors pertinent

> . . . include consideration of whether 'state issues substantially predominate . . . in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought;' a policy in favor of avoiding needless decisions of state law 'both as a matter of comity and to promote justice between the parties by providing for them a surer-footed reading of applicable law;' 'considerations of judicial economy, convenience and fairness to litigants;' consideration of whether 'the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong.'"

*Jackson v. Stinchcomb*, 635 F.2d 462, 473 (5th Cir. 1981) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-27 (1966). In *Jackson*, the Fifth Circuit found that "[b]ecause the state law issues [were] subsidiary issues in the federal question claim, . . . the state issues [were] not substantially predominant." 635 F.2d at 473. The Fifth Circuit then held that their "review of the *Gibbs* discretionary factors in the context of th[e] case persuade[d the panel] that the exercise of pendent jurisdiction [was] appropriate at th[at] stage of the litigation." *Id.*

Unlike in *Jackson*, the Court finds that the consideration of the discretionary facts weighs against exercising supplemental jurisdiction. First, the state law defamation claims are not subsidiary to the federal claims. *Compare* (ECF No. 3, p. 3) (raising separate and distinct constitutional claims and defamation claims against different defendants) *with Jackson*, 635 F.2d at 473 (stating that "the state law issues are also subsidiary issues in the federal question claim."). Second, the scope of the issues raised against the Defamation Defendants are substantially larger than the scope of the issues raised in the federal claim against Camacho. Third, because of the separate nature of the constitutional claims and the defamation claims, the "policy in favor of avoiding needless decisions of state law" weighs in favor of declining to exercise supplemental jurisdiction. *Jackson*, 635 F.2d at 473. Accordingly, the Court recommends that the District Court decline to exercise supplemental jurisdiction over the defamation claims against the Defamation Defendants.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that Torres has failed to state a claim against the El Paso Police Department.  Further, the Court finds that Detective David Camacho should be served.  Finally, the Court finds that the claims against Heidi Mena, KFOX News, KVIA News, KDBC News, and the El Paso Times, should be dismissed, or in the alternative that the District Court decline to exercise supplemental jurisdiction over those claims.

Accordingly, the Court **RECOMMENDS** that:

- Torres's claim against Defendant the El Paso Police Department be **DISMISSED** for failure to state a claim upon which relief can be granted;

- Defendant Detective David Camacho be **SERVED**;

- Torres's defamation claim against Defendant Heidi Mena **BE DISMISSED**;

- Torres's defamation claim against Defendant KFOX News **BE DISMISSED**;

- Torres's defamation claim against Defendant KVIA News **BE DISMISSED**;

- Torres's defamation claim against Defendant KDBC News **BE DISMISSED**; and

- Torres's defamation claim against Defendant El Paso Times **BE DISMISSED**.

**SIGNED** and **ENTERED** this 14th day of August, 2020.

**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE</u>

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**